**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 24-1237**

───────────────

COLONIALWEBB CONTRACTORS COMPANY,

> Plaintiff – Appellee,

v.

HILL PHOENIX, INC.,

> Defendant – Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, Senior District Judge. (3:23-cv-00722-HEH)

───────────────

Argued: February 12, 2026                    Decided: May 4, 2026

───────────────

Before DIAZ, Chief Judge, and WILKINSON and HEYTENS, Circuit Judges.

───────────────

Order reversed and matter remanded to the district court for further proceedings by published opinion. Judge Heytens wrote the opinion, which Chief Judge Diaz and Judge Wilkinson joined.

───────────────

**ARGUED:** Robert William Loftin, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Courtney Moates Paulk, HIRSCHLER FLEISCHER, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Robert R. Redmond, Jr., Patrick F. Dillard, MCGUIREWOODS LLP, Richmond, Virginia, for Appellant. Eliza J. Unrein, HIRSCHLER FLEISCHER, P.C., Richmond, Virginia, for Appellee.

───────────────

TOBY HEYTENS, Circuit Judge:

One company filed two state court actions against another for breach of contract. Mistakenly believing the two suits were one action (and that a single complaint had been erroneously filed twice), the defendant filed a single notice of removal that also asked the federal district court to consolidate the two cases into one. The district court's clerk's office did so. Later—acting "on its own initiative"—the district court remanded the cases to state court because it concluded the "consolidation of the state cases was improper." JA 611, 614. We have appellate jurisdiction to review the remand order because it did not rest on a lack of subject matter jurisdiction and relied on a basis for remand that no party raised via a timely motion. On the merits, we reverse the district court's order because it remanded the case without statutory authority to do so and return the matter to the district court for further proceedings.

I.

The underlying disputes involve contracts to buy industrial refrigeration equipment. In October and December 2020, plaintiff ColonialWebb Contractors Company submitted purchase orders to defendant Hill Phoenix, Inc. for projects in Colorado and Michigan, respectively. Both times, ColonialWebb was dissatisfied with what it received.

ColonialWebb responded by filing two almost-identical complaints against Hill Phoenix in the same Virginia state court. We do not exaggerate the complaints' similarity for dramatic effect. Besides the contracts themselves (which were attached as exhibits) and minor variations in tense (past v. present v. future), the *only* differences between the as-filed complaints were the amounts of damages sought and single references to the

2

locations of the underlying projects and the dates of the purchase orders. The complaints were stamped "received and filed" on the same day and assigned state court docket numbers just one digit apart.

Despite having filed suit, ColonialWebb did not serve either complaint on Hill Phoenix. Months later, the law firm that has represented ColonialWebb throughout this litigation served Hill Phoenix with a state court order granting ColonialWebb's motion to amend its complaint in the Colorado case. ColonialWebb does not challenge Hill Phoenix's assertion that it only received "an order granting the motion to amend in one of the cases." Hill Phoenix Br. 4.

Still lacking either complaint, Hill Phoenix checked the state court's docket and discovered two pending cases against it. Because the state court's docketing system did not permit parties to retrieve copies on their own, Hill Phoenix asked the clerk's office to provide it with all filings from both state court actions.

But something went wrong. In Hill Phoenix's later notice removing both cases to federal court, it attached copies of everything it says it received from the state court. Aside from having different docket numbers on the first page, the two versions of the initial complaints that Hill Phoenix received from the state court clerk are *identical*: Both reference only a December 2020 Michigan contract and request one million dollars in damages.[1] In other words, the documents Hill Phoenix claims it received from the state

---

[1] Although ColonialWebb later asserted that the documents attached to the notice of removal "do not accurately reflect the files of the" relevant state court, JA 435, it does not (Continued)

3

court clerk's office appear to be two copies of the same complaint with two different (and adjacent) docket numbers.

Based on its understanding that the two complaints were functionally identical, Hill Phoenix filed a single notice of removal to federal court. The caption and body of the notice of removal reference both state court docket numbers and assert that "[i]t appears that identical cases were opened in error." JA 5. Hill Phoenix thus "request[ed] that" the district court "consolidate these two actions, which have a single operative complaint, into one action." *Id.*

Without awaiting direction from the court, the district court's clerk's office opened a single civil action, thus effectively granting Hill Phoenix's request for consolidation. Still believing there was only one dispute and that it involved only the Michigan contract, Hill Phoenix moved to dismiss the case for failure to state a claim.

ColonialWebb responded by moving "to remand this matter" (singular) back to state court. JA 163. In both the motion and its supporting memorandum, ColonialWebb explained it filed two lawsuits (one involving a Colorado contract; the other, the Michigan one), that it had been granted leave to amend in the Colorado action, and that the state court had not acted on its motion for leave to amend in the Michigan action. Although the motion and memorandum both asserted that Hill Phoenix's single notice of removal "improperly consolidat[ed]" (JA 164), "purport[ed] to consolidate" (JA 218), or "attempt[ed] to

---

challenge Hill Phoenix's assertions about what it received, and the district made no findings about that issue.

4

consolidate" (JA 232 n.9) two separate state-court actions, that is *not* the basis on which ColonialWebb sought remand. Instead, ColonialWebb argued removal was improper because a forum-selection clause in the parties' contracts gave the Virginia state court in which they had been filed "exclusive jurisdiction" over the parties' disputes. JA 232. But cf. *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55–59 (2013) (holding that forum-selection clauses cannot render an otherwise-statutorily proper venue "wrong" or "improper"). Hill Phoenix opposed the motion to remand, asserting the forum-selection clause on which ColonialWebb relied was inapplicable and did not, in any event, mandate a state court venue.

With both Hill Phoenix's motion to dismiss and ColonialWebb's motion to remand still pending, the district court entered an order "on its own initiative." JA 594. The order stated that, "[u]pon review of the pleadings, the Court noticed potential issues surrounding the state court filings, service of process, and the removal and consolidation of the state cases." *Id.* The court thus directed the parties "to meet and confer" and then "file their statements with the Court" about several issues, including "[w]hether the consolidation of the two state court cases upon removal was proper." JA 594–95.

In its response, ColonialWebb made two relevant, albeit conflicting, assertions. On one hand, ColonialWebb claimed Hill Phoenix had "unilaterally" and "improperly" consolidated the two cases "upon removal," JA 599, and this action had itself rendered "the removal improper," JA 600. At the same time, however, ColonialWebb asserted the cases had not yet been consolidated and "cannot be consolidated until after the Court determines the threshold issue of whether removal [was] proper." JA 601.

5

The district court remanded the matter to state court. The court's order concluded that, "[a]lthough [Hill Phoenix] has adequately pled diversity jurisdiction, the state cases have been consolidated in error." JA 613 (footnote removed). The order also stated that the court was acting "on its own initiative" and that "in remanding the case, the Court does not reach the merits of [ColonialWebb's] Motion to Remand." JA 611 (first quote); JA 614 n.2 (second quote).

Hill Phoenix appeals the remand order, arguing the district court erred by sua sponte remanding the cases to state court. We conclude we have appellate jurisdiction to review that order and that the district court lacked statutory authority to issue it. We thus reverse the remand order and return this matter to the district court for further proceedings.

## II.

The "general . . . rule" is that orders remanding a case to state court may not be appealed. *Hertz Corp. v. Friend*, 559 U.S. 77, 83 (2010) (citing 28 U.S.C. § 1447(d)). At the same time, the Supreme Court has long understood the relevant jurisdictional statute as limiting district courts' power to remand and allowing appellate courts to ensure those limits are respected. See, *e.g.*, *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 342–52 (1976).

The threshold question—both for our appellate jurisdiction and the propriety of the underlying order—is whether a remand order "purport[s] to" be and "is colorably characterized as" being based on lack of "subject-matter jurisdiction." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 233–34 (2007). A federal court cannot adjudicate a suit's merits without first ensuring it has subject matter jurisdiction and must do so even

6

if "the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quotation marks removed). So just as a district court must dismiss a case originally filed in federal court if it "determines at any time that it lacks subject-matter jurisdiction," Fed. R. Civ. P. 12(h)(3), it also must remand whenever it reaches the same conclusion about a case that was removed from state court, see 28 U.S.C. § 1447(c). And *if* a district court's remand order "relie[s] upon a ground that is colorably characterized as subject-matter jurisdiction," 28 U.S.C. § 1447(d) bars "appellate review" of that decision. *Powerex Corp.*, 551 U.S. at 234.

But here—as elsewhere—the rules are different for non-jurisdictional issues. Federal courts normally "follow the principle of party presentation" under which "the parties . . . frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quotation marks removed). Reflecting that principle, 28 U.S.C. § 1447(c) states that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction *must* be made within 30 days after the filing of the notice of removal." (emphasis added); see, *e.g.*, § 1446 (establishing various procedural rules for removing civil actions to federal court). Because "Section 1447(c) effectively assigns *to the parties* the responsibility of policing non-jurisdictional questions regarding the propriety of removal," "a district court is prohibited from remanding a case *sua sponte* based on a procedural defect absent a [timely] motion to do so from a party." *Ellenberg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 198 (4th Cir. 2008). And because such an improper remand order is not "within the scope of 28 U.S.C. § 1447(c)," appellate courts remain

7

"free to review it." *Id.* at 196.

Our appellate jurisdiction and the propriety of the district court's remand order thus turn on two questions. (1) Was the district court's remand order based on lack of subject matter jurisdiction? If not, (2) were the grounds on which the court remanded raised by ColonialWebb within 30 days of the removal? Because we conclude the answer to both questions is no, we have appellate jurisdiction and hold that the district court exceeded its statutory authority in remanding this matter to state court. See *Doe v. Blair*, 819 F.3d 64, 68 (4th Cir. 2016) ("[T]he fact that we can review the district court's remand order because it fell outside the scope of [28 U.S.C.] § 1447(c) leads to the conclusion that the order fell outside the district court's authority to order remand."); see also *Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 220 (4th Cir. 2025) (stating that we review a "district court's ultimate legal decision to grant a motion to remand to state court de novo").

A.

"Nothing in the plain language or reasoning" of the district court's remand order "suggests that the district court believed it lacked subject matter jurisdiction to consider the case." *Lisenby v. Lear*, 674 F.3d 259, 262 (4th Cir. 2012). "Subject-matter jurisdiction defines the court's authority to hear a given type of case" or "category of claim." *United States v. Morton*, 467 U.S. 822, 828 (1984) (first quote); *Sinochem Int'l Co. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 431 (2007) (second quote). The types of cases and categories of claims federal courts may hear are listed in Article III § 2 of the United States Constitution and various federal jurisdictional statutes. One such category is "Controversies . . . between Citizens of different States." U.S. Const. art. III § 2. Subject

8

to limited exceptions and caveats (none of which apply here), such suits may be brought in federal court in the first instance if no plaintiff shares a citizenship with any defendant and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806). Such cases also may (subject, again, to exceptions that do not apply here) be removed from state to federal court so long as no properly named defendant "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

The district court's remand order did not purport to rely on any of these limitations. Quite the contrary. The order not only stated Hill Phoenix "ha[d] adequately pled diversity jurisdiction," JA 613, it walked through *how* Hill Phoenix had done so. As the district court explained, ColonialWebb "is a Virginia corporation with its principal place of business in Virginia," Hill Phoenix "is a Delaware corporation with its principal place of business in Georgia," and "[t]he amount in controversy exceeds $75,000 because [ColonialWebb] is seeking $1,000,000 in the Michigan case and $750,000 in the Colorado case." JA 613 n.1. The facts recited by the district court satisfy all relevant constitutional and statutory requirements for a diversity-based removal and do not even hint at the possibility that some other statutory limit on the court's subject matter jurisdiction might apply.

ColonialWebb's counterarguments are unpersuasive. *First*, it contends other language in the district court's remand order "indicates that the court relied on a lack of subject matter jurisdiction as the legal ground for remand." ColonialWebb Br. 11. In support, ColonialWebb cites the district court's statements that "[c]ourts must construe removal jurisdiction strictly," that "a remand is necessary" "[i]f federal jurisdiction is

9

doubtful," and that "[t]he removing party bears the burden of proving" jurisdiction. JA 612–13 (quotation marks removed). But those statements merely establish the district court understood its independent obligation to ensure it had subject matter jurisdiction— not that it thought such jurisdiction was lacking here. This reading is confirmed by the district court's later reference to consolidation as "a clerical decision by the Clerk's office" (JA 614): No such action by a clerk's office can create or destroy subject matter jurisdiction. See *Allen v. Atlas Box & Crating Co.*, 59 F.4th 145, 147–48 (4th Cir. 2023) (describing a clerk's role in accepting filings as "purely ministerial").

*Second*, ColonialWebb suggests that—even if the district court did not believe its consolidation-focused reasons for ordering remand were jurisdictional—our review is foreclosed because such reasons *could plausibly be described* as jurisdictional. That argument flips the statutory framework on its head. It is approaching cliché to call jurisdiction "a word of many, too many, meanings," *Santos-Zacaria v. Garland*, 598 U.S. 411, 421 (2023) (quotation marks removed), and subject matter jurisdiction is a notoriously tricky area of law. As both the Supreme Court and this one have explained, the "colorably characterized" test is designed to deal with situations in which a district court "purported to remand for lack of subject-matter jurisdiction" but there is reason to suspect the court's "characterization" of the basis for its remand may have been wrong. *Powerex Corp.*, 551 U.S. at 233–34; accord *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir. 2006) (describing the key issue as "the district court's *perception* that it lacked subject matter jurisdiction" (emphasis added)). But when—as here—the district court never said it was relying on lack of subject matter jurisdiction and "the substantive

10

reasoning behind the [remand] order" does not sound in jurisdiction at all, *In re Blackwater*, 460 F.3d at 584, there is no reason to ponder how that order might plausibly have been characterized.

B.

Having satisfied ourselves that the district court did not remand on jurisdictional grounds, we also conclude the basis on which the court remanded was not raised by "[a] motion" filed "within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). For that reason, we have appellate jurisdiction to review the remand order and hold the district court erred in issuing it. See *Ellenberg*, 519 F.3d at 196, 198.

It is "quite clear" to us that the district court "*purport*[*ed*] to remand" sua sponte. *Powerex Corp.*, 551 U.S. at 232. The remand order described "[t]his matter" as being "before the Court on its own initiative" and went out of its way to say the district court was "not reach[ing] the merits of [ColonialWebb]'s Motion to Remand." JA 611, 614 n.2. Just as "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992), the same applies when appellate courts review the work of trial courts. Of course, "the language of an opinion is not always to be parsed as though we were dealing with [the] language of a statute." *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (quotation marks removed). But here we see no reason to question the district court's own descriptions of the impetus for its decision or what issues it was and was not reaching.

ColonialWebb protests that it "raise[d] the issue of improper consolidation" throughout "its court filings," including in its timely remand motion. ColonialWebb Br.

11

15–16. Fair enough. But neither ColonialWebb's remand motion nor the supporting memorandum asserted—not even once—that the district court should remand based on the allegedly improper consolidation. To the contrary, ColonialWebb told the district court that "the *only* question[s] that must be resolved" to rule on its remand motion were "whether the forum selection clause contained in ColonialWebb's Terms and Conditions applies, and, if it does, whether it would be unreasonable to enforce it under the circumstances present." JA 227 (emphasis added). Thus, although ColonialWebb made *a* "motion to remand the case . . . within 30 days after the filing of the notice of removal," that motion did not identify the "defect" that formed the basis for the district court's ruling. 28 U.S.C. § 1447(c).

Our conclusion is not altered by a sentence fragment in ColonialWebb's response to the district court's supplemental briefing order asserting that Hill Phoenix's "improper[]" consolidat[ion]" of the two cases "render[ed] not only the consolidation but the removal itself improper." JA 600. Not only did the supplemental brief not argue for remand on any basis, it was also filed almost two months *after* the end of the 30-day deadline for filing non-subject-matter-jurisdiction-based remand motions, see 28 U.S.C. § 1447(c), and came in response to an order stating that the district court was acting "on its own initiative," JA 594. Section 1447(c) gives "*the parties*"—i.e., not the district court—"the responsibility of policing non-jurisdictional questions regarding the propriety of removal," *Ellenburg*, 519 F.3d at 198, and ColonialWebb cannot rely on the district court's later actions to excuse its own earlier default, see *al-Suyid v. Hifter*, 139 F.4th 368, 374 (4th Cir. 2025) (rejecting argument that a later-entered district court order could "resurrect an

already waived defense").[2]

\*      \*      \*

The circumstances giving rise to this appeal are unfortunate by any measure. Jurisdictional fights "complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims," *Hertz*, 559 U.S. at 94, and there are many ways all this could have been avoided. ColonialWebb could have served Hill Phoenix with both complaints instead of just a court order applicable to only one of them. The state court clerk could have spotted the (admittedly, minor) differences in the two complaints and sent Hill Phoenix the correct documents. Hill Phoenix could have filed two notices of removal instead of one, or ColonialWebb could have filed a timely remand motion based on Hill Phoenix's failure to do so. The district court's clerk's office could have sought directions from the court rather than effectively granting Hill Phoenix's consolidation request on its own. And the district court could have refrained from raising sua sponte a non-subject-matter-jurisdictional remand argument that had not been properly presented by any party.

---

[2] The fact that ColonialWebb never moved to remand on such grounds makes it unnecessary to decide whether either Hill Phoenix's decision to file a single notice of appeal or the allegedly improper consolidation of the two cases could have formed a valid basis for a remand motion. Whether prompted by a motion or not, district courts may remand only "on grounds . . . permitted by the controlling statute," *Thermtron Prods.*, 423 U.S. at 345, and the sole grounds allowed under 28 U.S.C. § 1447(c) are "lack of subject matter jurisdiction" or "a defect in removal" procedure, *Ellenburg*, 519 F.3d at 196 (quotation marks removed). We leave for another day whether the grounds relied on by the district court constitute a "defect" under Section 1447(c). Cf. *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 673 (4th Cir. 2018) (removing a case to federal court in violation of a forum-selection clause is *not* a "defect in the removal procedure").

13

But there is nothing we can do about any of that now. Instead, we follow the "straightforward rules" the Supreme Court has laid out for us in this area. *Hertz*, 559 U.S. at 94. Because the district court's order was not based on a perceived lack of subject matter jurisdiction and rested on grounds that were never raised via a timely remand motion, we hold that we have appellate jurisdiction and that the district court erred in remanding to state court.

The remand order is reversed and this matter is remanded to the district court for further proceedings consistent with this opinion.

*SO ORDERED*